## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SARA C. DEBORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 10-4055-WEB |
| | ) |
| MERCY HEALTH SYSTEM OF | ) |
| KANSAS, INC. and | ) |
| LEONARD WEAVER, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## MEMORANDUM AND ORDER

This employment discrimination lawsuit is before the court on the following motions:

1. Defendants' Motion to Compel Discovery (Doc. 111);

2. Defendants' Motion to Continue Pretrial Conference (Doc. 113);

3. Defendants' Motion for an Extension of Time to Complete Discovery (Doc. 119); and

4. Defendant Weaver's Motion for Leave to Amend (Doc. 120).

The rulings are set forth below.

### Background

Defendant Mercy Health Systems of Kansas ("Mercy") employed Sara Debord as a nuclear medicine/radiologic technician from 2004 to 2009. Highly summarized, plaintiff

alleges that she was subjected to unwelcome touching and sexually inappropriate comments from her supervisor, Leonard Weaver.  On July 6, 2009, Weaver approached plaintiff in her work area and wrapped his arms around her in an attempt to give her a hug.  Plaintiff posted a comment on her Facebook page that same day, stating that Weaver needed to "keep his creepy hands off" me.  Weaver learned about this Facebook comment and complained to Mercy's human resource department.  When questioned by human resources about the Facebook posting, plaintiff provided Mercy with additional comments concerning Weaver's inappropriate physical contact with her and other female employees.  Mercy suspended plaintiff and five days later terminated her employment.   Plaintiff alleges sexual discrimination and retaliation in violation of Title VII against Mercy and state law claims of assault and battery against Weaver.

Mercy denies that it engaged in sexual discrimination or retaliation and asserts that plaintiff was terminated on July 13, 2009 for disruptive behavior and dishonesty. Specifically, Mercy alleges that plaintiff's Facebook posting on July 6 falsely accused Weaver of submitting improper time records.  Weaver denies plaintiff's allegations of *inappropriate or unwelcome* physical contact and asserts a counterclaim for "defamation."[1] The defamation counterclaim is based on plaintiff's accusation that Weaver improperly increased "favorite" employee paychecks by modifying time-keeping records of the hours

---

[1]

Weaver admits that "he has demonstrated, without objection, that his hands were cold by bringing them into contact with the forearms of male and female employees, including plaintiff."  (Doc. 12, paragraph 14).

worked by his employees.

## Motion to Compel (Doc. 111)

Defendants move to compel plaintiff to produce documents responsive to Production Request Nos. 1, 2, 3, and 5.[2]  As explained in greater detail below, the motion shall be DENIED.

## Production Request No. 1

Request No. 1 seeks production of "all documents that reflect, constitute, relate, or refer to your Facebook status and any all comments thereto on July 15, 2009 and September 16, 2009."  Specifically, defendants seek production of Facebook postings that plaintiff sent to former coworkers in the radiology department "pertaining to infidelous [sic] behavior of their respective love interests."  (Doc. 111, p. 2).  Plaintiff opposes the motion, arguing that the requested information is not relevant.  The court agrees.[3]  Plaintiff was terminated on July 13, 2009 for disruptive behavior and subsequently sent Facebook comments about infidelity and affairs to her former coworkers on July 15 and September 16, 2009.  Regardless of

---

[2]

Mercy's motion also lists Production Request No. 6 as disputed.  (Doc. 111, p. 1). The court assumes that the reference to Production Request No. 6 was a drafting error because there is no further mention of Request No. 6 in the parties' briefs.

[3]

Mercy's legal arguments concerning relevance are based on older legal authority which discuss former versions of Fed. R. Civ. P. 26 and the scope of discovery.  Fed. Civ. P. 26(b) was amended in 2000 and refined the scope of discovery.

whether the July 15 and September 16 comments may have upset certain former coworkers, the Facebook postings could not have provided the basis for terminating plaintiff on July 13.[4] Accordingly, defendants' request to compel Production Request No. 1 shall be denied.

**Production Request No. 2**

Closely related to Request No. 1, Request No. 2 seeks all documents that relate "to correspondence between you and Lisa Warner (aka Lisa Smith) from July 2009 to September 2009 including but not limited to Facebook messages acknowledged by you in your deposition that relate or refer to Danny Bernd, Lisa's relationship with Danny Bernd, or any affirmative allegations or defenses raised in the pleadings." (Doc. 111, p. 3). As discussed above, plaintiff was terminated on July 13 and her communications to Lisa Warner after that date could not be the basis for her termination. Mercy's motion to compel Production Request No. 2 shall also be denied.

**Production Request No. 3**

Request No. 3 seeks all documents in any form to or from six named individuals and any current or former Mercy employees between July 1, 2009 and September 30, 2009 concerning (1) Mercy, (2) any former or current Mercy employee, (3) sexual harassment,

---

[4] Plaintiff previously produced Facebook posts that "relate to any event alleged in [plaintiff's] complaint." (Doc. 87). Gossip ***after plaintiff's termination*** about whether someone's spouse was "cheating" is too remote in time from the allegations in the complaint to be relevant.

and/or unwanted or unwelcome touching or comments.  Plaintiff contends that she has produced the requested documents and defendants present no credible or persuasive evidence that plaintiff's contention is erroneous.  Under the circumstances, defendants' motion to compel Request No. 3 shall be denied.

**Production Request No. 5**

Plaintiff sent a September 16, 2009 email to Kelli Sims "concerning 'a guy' and plaintiff's belief that he liked her."  Request No. 5 seeks all email messages between plaintiff "and the 'guy' which led you to believe that he liked you and your responses thereto."  Plaintiff opposes the motion to compel based on relevance, vagueness and invasion of privacy.  Defendants justify their discovery request by arguing that this information is relevant to plaintiff's "reputation, sexual proclivities and credibility."

The motion to compel Request No. 5 is summarily denied.  Defendants fail to present any cogent explanation why plaintiff's relationship with an unnamed man two months after her termination has any relevance to this case.  Moreover, the request appears designed to embarrass plaintiff and, if so, is an abuse of the discovery process.  The motion to compel Request No. 5 is denied.

**IT IS THEREFORE ORDERED** that defendants' motion to compel (**Doc. 111**) is **DENIED.**

### Defendants' Motion to Continue (Doc. 113)

Defendants move to continue the pretrial conference and to reset the deadlines for the filing of dispositive motions until the pending motions in the case are resolved.  The motion is **GRANTED** and revised deadlines will be established in a separate order.

### Defendants' Motion for an Extension of Time (Doc. 119)

The Scheduling Order established a March 31, 2011 deadline for the completion of discovery.  (Doc. 39).  Defendants move to reopen discovery, arguing that they learned from depositions on March 23 and 24 that plaintiff did not produce all of her Facebook comments related to this case in response to earlier discovery requests.  The discovery relief requested includes:  (1) issuance of a Rule 45 subpoena to Facebook to obtain all documents from plaintiff's Facebook account, (2) service of a Rule 34 production request to inspect plaintiff's Facebook account "for a historical download," and (3) a court order requiring plaintiff's execution of a "consent and authorization" for Facebook information.  Defendants also propose that the Facebook information be delivered to an independent third party for a determination of whether additional responsive documents are contained within the materials and the related costs would be shared equally by the parties.  Plaintiff opposes the motion and, for the reasons set forth below, the motion shall be DENIED.

The first snippet of deposition testimony proffered by defendants in support of their motion relates to plaintiff's March 23, 2009 responses to a series of questions:

Q.      When's the last time that you or anybody on your behalf that you

- 6 -

know of has contacted Ms. Riley, communicated with Ms. Riley?[5]

A.    Regarding this case, or just –

Q.    This matter, um-hum.

A.    Pardon?

Q.    Yes.

A.    Never.  I mean, I sent a message to her maybe three, four, five, six months after I was fired saying that I didn't work at Mercy anymore, that I was fired, but that was it.

Q.    Did she respond?

A.    She said I can't believe you were fired.

Q.    And you sent her a text message?

A.    No, I believe that was a Facebook message.

Q.    Did you tell her why you were fired?

A.    I think I did, but I'm not positive.

Q.    What do you recall telling her?

A.    It's the same thing I told everyone, that I complained of sexual harassment and I was fired.

The second snippet of deposition testimony came from Heather Boss on March 24, 2009.

Ms. Boss testified that she sent a Facebook message to plaintiff "six or eight months ago"

expressing surprise that this lawsuit was listed in a Florida magazine.  Defendants contend

-------

[5]

      Ms. Riley apparently was a student at Mercy during some unspecified period of time.

that an extension of time to conduct "limited" discovery of the Facebook information is warranted because of plaintiff's "pattern of dishonesty."

The court is not persuaded that defendants have established good cause for extending the discovery deadline. First, the two examples of deposition testimony cited by defendants are benign and do not establish a "pattern of dishonesty." More importantly, "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case." Fed. R. Civ. P. 26(b)(2)(C). As noted above, this case is relatively straightforward: plaintiff contends that Mr. Weaver engaged in inappropriate touching and comments and that she was terminated after complaining about his misconduct. Mr. Weaver and Mercy concede that he frequently touched subordinate employees but that (1) the contact was not of a sexual nature and (2) his subordinates did not object to his physical contact or comments. Mercy also contends that plaintiff was terminated for (1) "disruption" and (2) alleging that Weaver allowed his favorite employees to be overpaid. The contentions concerning the factual circumstances leading up to plaintiff's termination are well defined and a jury will ultimately be asked to determine whether Mr. Weaver's physical contact and comments to subordinates amounted to sexual harassment and whether Mercy retaliated after plaintiff expressed complaints.

Defendants' proposed discovery of plaintiff's Facebook account focuses on the period of time *following* her termination and extending to the present. It would include production of significant personal information which has nothing to do with this case. The court is simply not persuaded that the benefits of the proposed discovery outweigh the associated

burdens and expenses, given the needs of the case.  Accordingly, defendants' motion shall be denied.

**IT IS THEREFORE ORDERED** that defendants motion "for an extension of time" (**Doc. 119**) is **DENIED.**

### Defendant Weaver's Motion to Amend (Doc. 120)

Defendant Weaver moves to amend his counterclaim to (1) add new defamatory acts and (2) streamline the existing claims to conform to the evidence that was adduced prior to the close of discovery.  Plaintiff does not object to Weaver amending his counterclaim to "streamline" the existing issues in the case but does object to adding "new claims."  For the reasons set forth below, Weaver's motion shall be granted.

The standard for permitting a party to amend his pleading is well established.  Without an opposing party's consent, a party may amend his pleading only by leave of the court.  Fed. R. Civ. P. 15(a).  Although such leave to amend "shall be freely given when justice so requires," whether to grant leave is within the court's discretion.  Panis v. Mission Hills Bank, 60 F.3d 1486, 1494 (10th Cir. 1995)(citing Woolsey v. Marion Labs., Inc., 934 F. 2d 1452, 1462 (10th Cir. 1991)).  In exercising its discretion, the court must be "mindful of the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities."  Koch v. Koch Industries, 127 F.R.D. 206, 209 (D. Kan. 1989).  The court considers a number of factors in deciding whether to allow an amendment, including

untimeliness, prejudice to the other party, bad faith, and futility of amendment.  Hom v. Squire, 81 F.3d 969, 973 (10th Cir. 1996).

The focus of plaintiffs' objections to the motion to amend is Weaver's proposal to add two "new" allegations of defamation to his counterclaim.  Specifically, Weaver seeks to add allegations that plaintiff defamed him (1) on July 8, 2009 by telling Heather Boss, a former co-worker who reported to Mr. Weaver, that Weaver had destroyed certain work records, and (2) in 2010 when plaintiff told Melissa Stewart, another former coworker, that Weaver took the callback logs from the Radiology Department to hide the fact that he had been adding money to plaintiff's paycheck.

Plaintiff contends the motion to amend is untimely because (1) the scheduling order established an October 5, 2010 deadline to amend the pleadings and (2) Weaver was not diligent in conducting discovery and amending his complaint.  Weaver counters that he did not discover the two new acts of defamation until March 24, 2011 when he deposed Stewart and Boss.  Weaver also argues that deferring the deposition of the two witnesses until March 24 was reasonable because the parties had scheduled mediation on March 2, 2011 and, had a settlement been reached, the depositions of the two witnesses would have been unnecessary.

Under the circumstances, Weaver's decision to wait until after the scheduled mediation to depose Stewart and Boss was reasonable given the parties' scheduled mediation on March 2, 2011.  More importantly, the proposed "new" allegations parallel the allegations in the original counterclaim and provide more detail.   Weaver's original counterclaim

alleged that plaintiff falsely and maliciously defamed him on July 8 by telling Tena Walsh that Weaver took the call back records "to get rid of them."   (Doc. 28, paragraphs 4, 5, 6, and &7).[6]   The next paragraph then alleges that the defamatory statements were

> published to plaintiff's friends and coworkers, many of whom worked directly under Mr. Weaver's supervision, and then *repeated and published to other employees of Mercy Hospital in Independence Kansas and others in Mr. Weaver's community.*

(Doc. 28, paragraph 8)(emphasis added).  The proposed amended counterclaim clarifies the "who" and "when." Given the language in the original counterclaim, plaintiff is not prejudiced by the amendment which provides more specificity.  Because the proposed amendment is neither untimely nor prejudicial, Weaver's motion shall be granted.

**IT IS THEREFORE ORDERED** that defendant Weaver's motion to amend (**Doc. 120**) is **GRANTED.**  Weaver shall file his amended counterclaim on or before August 15, 2011.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 8th day of August 2011.

S/ Karen M. Humphreys
KAREN M. HUMPHREYS
United States Magistrate Judge

---

[6]  Weaver contends that the records were in fact taken by a hospital supervisor who was conducting an investigation concerning plaintiff's allegations of payroll misconduct.